ORIGINAL

O 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| | DOCKET NO. |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JESSICA GODOY RAMOS | |
| | MAGISTRATE'S CASE NO.<br>**17MJ 02260** |

Complaint for violation of Title 18, United States Code, Sections 1341 and 1028A

| NAME OF MAGISTRATE JUDGE<br>Honorable Jean Rosenbluth | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>2014 through February 2017 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

**See Attachment**

FILED
CLERK, U.S. DISTRICT COURT
SEP - 8 2017
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

LODGED

2017 SEP -8 AM 10: 14

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Maria Castro |
|---|---|
| | OFFICIAL TITLE<br>Special Agent, Homeland Security Investigations |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>**JEAN P. ROSENBLUTH** | DATE<br>September 8, 2017 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Andrew Brown, 11th floor, x0102          WARRANT

**Attachment to Jessica Godoy Ramos Complaint**

## COUNT ONE
[18 U.S.C. § 1341]

Beginning in or before 2014, and continuing through at least February 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant JESSICA GODOY RAMOS ("defendant") knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from them by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

The fraudulent scheme was carried out, in substance, in the following manner and by the following means, among others:  Defendant, who failed to complete law school and pass the bar exam, found a practicing attorney in New York with a similar name, and impersonated her. Posing as the genuine attorney, defendant solicited attorney's fees from victims who needed help with immigration matters.  With some victims, defendant simply took their money and performed no services.  With other victims, defendant submitted immigration petitions on their behalf as though she were an attorney.  Defendant also counterfeited immigration parole documents and gave them to her clients to make it appear that she had succeeded on their behalf.

On or about May 25, 2016, within the Central District of California, defendant, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon, a Form I-485, Application to Register Permanent Residence or Adjust Status and a Form I-130, Petition for Alien Relative.

## COUNT TWO
[18 U.S.C. § 1028A]

Beginning in or before 2014, and continuing through at least February 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant JESSICA GODOY RAMOS knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation of Title 18, United States Code, Section 1341, Mail Fraud, as charged in Count One.

## AFFIDAVIT

I, Maria F. Castro, being duly sworn, declare and state as follows:

### I.    INTRODUCTION

1.    I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been a SA with HSI since the inception of HSI in 2003. Prior to my tenure as a SA with HSI, I was a SA with legacy Immigration and Naturalization Service ("INS") since 2002. Prior to my position as a SA with legacy INS, I was an Immigration Enforcement Agent.  I am currently assigned to the Document and Benefit Fraud Task Force ("DBFTF") at the Los Angeles field office which is tasked with investigating all immigration-related fraud.  During my tenure as a SA for HSI and legacy INS, I have conducted and assisted in numerous investigations of criminal organizations involved in committing immigration fraud and other federal violations to include visa and passport fraud, employment-based immigration fraud, counterfeit document fraud, and identity theft.

### Affidavit in Support of a Complaint

2.    This affidavit is made in support of an application for a criminal complaint and issuance of an arrest warrant for JESSICA GODOY RAMOS ("RAMOS") for violations of Title 18, United States

1

Code, Sections 1341, mail fraud, and 1028A, aggravated identity theft.

3.   The facts set forth in this affidavit are based upon my own personal observations; training and experience; and information obtained from interviews of witnesses and from other law enforcement agencies and Federal officials, and my review of records.   This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.

## II.   OVERVIEW OF THE SCHEME

4.   RAMOS did not complete law school or pass the bar, but pretended she had.   She found a genuine attorney in New York who had a similar name, and impersonated her.   RAMOS accepted money from clients and filed about 40 immigration petitions for them. She also counterfeited immigration parole documents and gave them to her clients to make it appear that she had succeeded on their behalf.   At least one of her clients entered the U.S. using such a counterfeit document.   In other instances, RAMOS simply pocketed the payments she received from clients and never performed any work for them.   RAMOS confessed and voluntarily provided investigators with her files.

2

### III.   <u>STATEMENT OF PROBABLE CAUSE</u>

5.   On February 6, 2017, HSI Los Angeles was contacted by USCIS in regards to five individuals who appeared at the USCIS office under the belief that they had an appointment with USCIS to obtain their immigration benefit.  These five individuals were represented by RAMOS who had abandoned them at the USCIS office. SA Darwin Tchan and I briefly interviewed four of the five individuals who have stated that RAMOS told them that she was an attorney and that she could assist them with their immigration issues.  These individuals stated that they paid RAMOS thousands of dollars for her immigration services.  RAMOS had told these individuals that they had an appointment with USCIS for that day to pick up their "green card" or permanent resident card. However, USCIS had no record of any appointment for these individuals in their computer system.  Two of the individuals had in their possession what appeared to be fraudulent USCIS-issued immigration documents which they said were given to them by RAMOS.

6.   On or about February 14, 2017, I received information from USCIS, Fraud Detection and National Security ("FDNS") Officer Katherine Garcia who found through USCIS database system checks approximately 40 immigration applications associated with RAMOS that had been submitted to USCIS.

**One of RAMOS's Clients Entered the U.S. Using a Counterfeit Parole Document Provided by RAMOS**

7.   On February 13, 2017, SA Roy Casas and I interviewed Maria Bejar-Mejia ("Bejar") at her residence in Paramount, California. Bejar provided the following:

a.   Bejar initially entered the United States illegally in 2001.  Bejar wanted to adjust her status to a permanent resident in the United States.

b.   In July 2014, Bejar and her husband met with RAMOS at a Starbucks Coffee in Lynwood, California.  RAMOS identified herself as an attorney from New York who could assist Bejar in obtaining legal immigration status.  RAMOS told Bejar that they were meeting at the Starbucks because RAMOS was only performing immigration services part time and that she needed the money because she was ill.

c.   At the meeting, RAMOS said she would charge Bejar $2,000 for her legal services, which Bejar paid during the course of the immigration process with RAMOS.

d.   Bejar signed a Department of Homeland Security form indicating RAMOS was her representative (Form G28, Notice of Entry of Appearance as Attorney or Accredited Representative) and her husband signed the

4

petition for Bejar (Form I-130, Petition for Alien Relative).

e. Bejar's husband, Lorenzo Carrillo ("Carrillo"), applied for U.S. citizenship in 2015 with RAMOS' assistance. In 2016, Carrillo appeared for his citizenship interview at USCIS with RAMOS as his attorney.

f. In January 2015, RAMOS had assisted Bejar in filing for advance parole. In July 2015, before leaving for Mexico, RAMOS gave Bejar an advance parole document that was labeled as I-521, but should have been I-512. (In fact, as RAMOS later admitted, RAMOS counterfeited the parole document).

g. Bejar stated in the interview that she did not know that the advance parole document was counterfeit and she used the document to enter the U.S. (Although the Customs and Border Protection officer who examined the document was suspicious of it and referred Bejar to secondary inspection, Bejar succeeded in entering the U.S. with it).

h. Per RAMOS, Bejar's original appointment for her application for adjustment of status was January 19, 2017 but was changed to January 23, 2017. On January 23, 2017, Bejar went to the USCIS office in Santa Ana,

5

California where the USCIS information officer informed her that she had no appointment on that day and that her appointment letter was fake. At the time, Bejar called RAMOS and told her what the USCIS information officer had said about the appointment and the appointment letter. RAMOS called the Hispanic female officer a racist.

i. On January 30, 2017, Bejar and RAMOS went to USCIS in Los Angeles, California to pick up Bejar's permanent resident card and social security card. After waiting for two hours, RAMOS told Bejar that her contact within USCIS was in a meeting and that they needed to return the following week.

j. On February 6, 2017, Bejar had another appointment with USCIS and met with RAMOS at the USCIS waiting room. About an hour later, RAMOS left the waiting room to use the restroom. Bejar later inquired with RAMOS as to her status. RAMOS told Bejar she was in a meeting with her USCIS contact in another room.

k. A few hours later, a USCIS official appeared in the waiting room. Bejar gave the USCIS official two documents she had in her possession for review. The USCIS official later informed Bejar that she did not

have an appointment with USCIS nor was she located in the USCIS database.

l.    Bejar later attempted to contact RAMOS unsuccessfully.

**RAMOS Falsley Told a Client He Had an Immigration Interview, and then Abandoned Him When Her Lie Was Exposed**

8.   On February 14, 2017, SA Roy Casas and I interviewed Vidal Rios ("Rios") at his residence in Compton, California.  Rios provided the following:

a. Rios was seeking assistance from RAMOS in extending his expiring permanent resident card and applying for U.S. citizenship.

b. On October 27, 2015, Rios went to RAMOS' residence in Lynwood, California.  RAMOS told Rios that she was a licensed attorney from New York and that she could assist him with his immigration matter.

c.   Rios stated that RAMOS charged him $1,700 for her services.  Rios eventually paid RAMOS $1,200 in cash.

d.   RAMOS had Rios sign what he believed to be his citizenship application.  RAMOS told Rios that he did not need to apply for an extension of his permanent resident card.

e.   RAMOS told Rios he had appointments for a citizenship interview scheduled for various dates ranging from August 2016 to January 2017, all of which were "cancelled."  After the last

7

canceled appointment in January, Rios contacted RAMOS because he needed to renew his permanent resident card so he could travel to Mexico. At that point, RAMOS supposedly scheduled an appointment with USCIS for February 6, 2017.

f. On February 6, 2017, RAMOS picked up Rios at his residence for his alleged appointment with USCIS. Rios believed the appointment was to obtain his permanent resident card renewal and to take his citizenship interview.

g. RAMOS left the USCIS waiting room telling Rios that she was going to speak with her USCIS contact about his appointment. RAMOS never returned to the waiting room.

h. Rios was informed by the security officer that he had no appointment with USCIS.

9. On February 22, 2017, I met with USCIS Field Security Manager Narbeh Hartoonian to review the closed circuit video footage of the USCIS waiting room 6024 for February 6, 2017. This review confirmed that RAMOS was in the waiting room with her clients on February 6, 2017.

**RAMOS Confessed to Impersonating a Lawyer**

10. On March 15, 2017, RAMOS presented herself to USCIS officials and agreed to be interviewed by HSI agents and USCIS FDNS Officer Katherine Garcia because she wanted to come forward and tell the truth. In addition, she wanted to come forward because her clients attempted to contact her and showed up at

8

her parents' house.    SA Aaron O'Dell, FDNS Officer Garcia and I interviewed RAMOS at the Los Angeles HSI office.    RAMOS was not given her Miranda Rights but was advised that she was not under arrest, was not being detained, and could terminate the interview at any time.    RAMOS stated that she understood and agreed to be interviewed.    RAMOS related the following:

a.    RAMOS stated, "I am not a licensed attorney.    There is a licensed attorney in New York, but I don't know her.    I have been using her license number."

b.    RAMOS stated that her deception about being an attorney began with her failure to graduate from USC law school in 2010. RAMOS did not tell her family that she did not finish law school.

c.    From June 2014 to March 2016, RAMOS worked as an attorney for the Law Offices of Alfonso Morales ("Morales") in Lynwood, California.    RAMOS stated that she told Morales that she was an attorney.

d.    Because she knew she did not have an attorney license, RAMOS initially informed Morales she wanted only to assist in preparing immigration documents.    Based on how well clients responded to RAMOS, Morales wanted her to represent clients in immigration interviews and hearings.    At that time, Morales began pressuring RAMOS for her license.

9

e.   To satisfy Morales, RAMOS searched the internet and found an attorney with the same name and began using the attorney's bar license number (Jessica Elena Ramos-Guifarro, #4938288).

f.   RAMOS created a fraudulent New York State Bar Association card with her laptop computer.

g.   RAMOS proceeded to obtain an Executive Office for Immigration Review (EOIR) identification number by using the fraudulent bar association card.  This allowed her to serve as an attorney at EOIR immigration hearings for both Morales' clients and her own clients.

h.   RAMOS began working immigration cases for herself around June 2014 or 2015, while still employed with Morales.

i.   RAMOS charged her clients from $1,000 to $2,000 for her services.  RAMOS had clients in several states, including California, New York, Georgia, and North Carolina.

j.   RAMOS stated that she filed approximately 30 to 50 applications with USCIS on behalf of her clients.

k.   RAMOS admitted she received money from clients for which she did not file any immigration applications.  RAMOS believed those clients were not eligible for any immigration benefit and withheld this information from them because she wanted to retain their money.

10

l.   RAMOS created fraudulent documents for some of her clients in order to have them believe that she filed applications for them with USCIS.

m.   RAMOS created fraudulent USCIS decision letters for Maria Bejar, Alicia Ibarra, Mercedes Rivera, and Angela Contreras, and Valerio Santana.  These USCIS decision letters indicated that the aforementioned clients were approved for permanent resident status in the United States.

n.   RAMOS also created fraudulent advance parole documents for Bejar and Irma Sandoval.

o.   RAMOS stated that she produced the fraudulent documents on her laptop computer while she was residing at her parents' home in Lynwood, California.

p.   RAMOS stated that none of her clients knew that the documents she gave them were fraudulent.

q.   RAMOS stated that she stopped preparing immigration paperwork, but was still accepting money from clients.  RAMOS stopped accepting new clients in February 2017 when the incident at the USCIS office occurred.

r.   RAMOS prepared and signed a written confession at the end of the interview.

**RAMOS Voluntarily Provided Her Files to Investigators**

11.  On March 21, 2017, SA Aaron' O'Dell and I met with RAMOS at a mini storage facility located at 8160 Rosecrans Avenue,

11

Paramount, CA 90723. RAMOS signed a written consent to search form (ICE FORM 73-005), and opened unit number 1112 with her key. Inside the storage unit, SA O'Dell and I discovered two container bins of documents and files. These documents were seized and transported to HSI offices for further review.

12. In May 2017, FDNS officer Katherine Garcia, SA Deedee Southerland, SA Darwin Tchan, and I reviewed the contents of the two containers of miscellaneous documents that were seized from RAMOS at the storage facility. Agents discovered immigration applications and supporting documentation for approximately 80 individuals believed to be RAMOS' clients.

13. During the investigation, I reviewed the DHS immigration files containing the petitions and/or applications submitted by RAMOS on behalf of her clients. These files are commonly referred to as Alien files or "A-Files", which generally contain documents related to the filing for an immigration benefit and provide a permanent record of the alien's immigration history.

a. On or about May 27, 2016, USCIS received a Form I-485, Application to Register Permanent Residence or Adjust Status and a Form I-130, Petition for Alien Relative, for beneficiary Dolores Cruz ("Cruz"). The applications were signed by RAMOS as the preparer of both applications:

i. Two G-28 forms, Notice of Entry of Appearance as Attorney or Accredited Representative were signed by

12

RAMOS indicating that she was the attorney of record for Cruz and her petitioner, Itzel Yasmin Cruz.

ii.  A U.S. Postal Service priority mail envelope dated May 25, 2016 was contained in the A-File.  The envelope was addressed to USCIS with RAMOS as the sender.  The USCIS address is designated specifically for the submission of I-130 and I-485 applications.

b.    On or about May 27, 2016, USCIS received a Form I-485, Application to Register Permanent Residence or Adjust Status and a Form I-130, Petition for Alien Relative, for beneficiary David Javier Cruz-Luna ("Cruz-Luna").  The applications were signed by RAMOS as the preparer of both applications:

i.    Two G-28 forms, Notice of Entry of Appearance as Attorney or Accredited Representative were signed by RAMOS indicating that she was the attorney of record for Cruz-Luna and his petitioner, Itzel Yasmin Cruz.

ii.  A U.S. Postal Service priority mail envelope dated May 25, 2016 was contained in the A-File.  The envelope was addressed to USCIS with RAMOS as the sender.  The USCIS address is designated specifically for the submission of I-130 and I-485 applications.

iii. A U.S. Postal Service express mail envelope dated October 15, 2016 was also in the A-File.  The envelope was addressed to USCIS with RAMOS as the sender.  The

13

USCIS address is designed specifically to submit additional requested information.

### IV.   CONCLUSION

14.   Based upon the information set forth above, I believe there is probable cause for a criminal complaint and an issuance of an arrest warrant for violations of Title 18, Unites States Code, Section 1341 (Mail Fraud) and Title 18, Unites States Code, Section 1028A (Aggravated Identity Theft).

_____
Maria F. Castro
Special Agent, HSI

Subscribed to and sworn before me
on September 8th, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

**JEAN P. ROSENBLUTH**

14